UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

ERMANNO TRABUCCO and ANGELINA
PANVINI,                                          :

                              :

              Plaintiffs,            :

                              :

      - against -                      :        **Index No. 09-CV-01046 (DC)**

                              :

INTESA SANPAOLO, S.p.A. and,                    :
INTESA SANPAOLO PRIVATE,                         :
BANKING S.p.A.,                                  :

                              :

              Defendants.            :

-------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

ORANS, ELSEN, LUPERT & BROWN LLP
Robert L. Poltz
Leslie A. Lupert
875 Third Avenue, 28th Floor
New York, New York 10022
(212) 586-2211
Attorneys for the Plaintiffs

Dated: September 11, 2009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………...…………………...…………………...………i

PRELIMINARY STATEMENT…………………………………………………………………1

STATEMENT OF FACTS……………………...………....……………...………………………3

ARGUMENT…………………………………………………………...……........................5

I.    THIS COURT HAS PERSONAL JURISDICTION OVER PRIVATE
      BANKING……………...…………………………………………….……………....5

II.   THE MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS*
      MUST BE DENIED……………………………………………………………..11

      A. The Plaintiff's Choice of Forum is Entitled To Great Deference
         as a Matter of Law……………………...…………………….……………..11

      B. As a Practical Matter, Italy is Not an Adequate Alternative
         Forum……………………………………………………………………..15

      C. Public and Private Interest Factors Weigh Strongly
         in Favor of Maintaining the Action in this Forum…………………………......16

III.  INTESA'S MOTION TO DISMISS THE CONTRACT CLAIM SHOULD BE
      DENIED……………………………………………………………..………….19

IV.   PLAINTIFFS ALLEGE A VALID FRAUD CLAIM…………………...………20

CONCLUSION………………………………………………………………...……...22

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page**

A.I. Trade Fin., Inc. v. Petra Bank,
   989 F.2d 76 (2d Cir. 1993)........................................................................ 6

Altmann v. Republic of Austria,
   317 F.3d 954 (9th Cir. 2002), aff'd, 541 U.S. 677, 124 S. Ct. 2240, 159 L.Ed.2d 1 (2004)..... 17

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
   171 F.3d 779 (2d Cir. 1999)...................................................................... 9

Bluestone Capital Partners, L.P. v. MGR Funds, Ltd.,
   No. 98 Civ. 3128, 1999 WL 322658 (S.D.N.Y. May 20, 1999)................................ 9

Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,
   145 F.3d 481 (2d Cir.1998)....................................................................... 17

BS Sun Shipping Monrovia v. Citgo Petroleum Corp.,
   509 F. Supp. 2d 334 (S.D.N.Y. 2007)........................................................... 4

Burger King Corp. v. Rudzewicz,
   471 U.S. 462, 105 S. Ct. 2174 (1985).......................................................... 8

Calavo Growers of Cal. v. Generali Belgium,
   632 F.2d 963 (2d Cir.1980)....................................................................... 14

Cardone v. Jiminy Peak, Inc.,
   245 A.D.2d 1002, 667 N.Y.S.2d 82 (3d Dep't 1997)........................................ 9

Carey v. Bayerische Hypo-Und Vereinsbank AG,
   370 F.3d 234 (2d Cir. 2004)...................................................................... 12

Coriander, Inc. v. Eurocompany, S.p.A.,
   No. 89 Civ. 7353,1991 WL 150623 (S.D.N.Y. July 29, 1991) ............................ 17

D.H. Blair & Co. v. Gottdiener,
   462 F.3d 95 (2d Cir. 2006)....................................................................... 10

Goldman v. Belden,
   754 F.2d 1059 (2d Cir. 1985).................................................................... 20

Gould Paper Corp. v. Gomez,
   No. 07 Civ. 6087, 2008 WL 113900 (S.D.N.Y. Jan. 11, 2008)............................ 15

Graubard Mollen Dannett & Horowitz v. Moskovitz,
        86 N.Y.2d 112, 653 N.E.2d 1179, 629 N.Y.S.2d 1009 (1995)................................. 21

Gulf Oil Corp. v. Gilbert,
        330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)...................................... 11, 16, 17

Henderson v. Metropolitan Bank & Trust Co.,
        502 F. Supp. 2d 372 (S.D.N.Y. 2007)................................................................ 16, 17

ICC Industries, Inc. v. Israel Discount Bank, Ltd.,
        No. 04 Civ. 6945, 2005 WL 1844616 (S.D.N.Y. July 29, 2005) ........................... 18

In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.,
        228 F.Supp.2d 348 (S.D.N.Y. 2002)....................................................................... 18

Iragorri v. United Techs. Corp.,
        274 F.3d 65 (2d Cir. 2001)........................................................................ 11, 12, 15

Koster v. (Am.) Lumbermens Mut. Cas. Co.,
        330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)................................................ 12

Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,
        918 F.2d 1039 (2d Cir. 1990)..................................................................................... 9

Lehman v. Humphrey Cayman, Ltd.,
        713 F.2d 339 (8th Cir.1983) ................................................................................... 13

McKee Elec. Co. v. Rauland-Borg Corp.,
        20 N.Y.2d 377, 283 N.Y.S.2d 34 (1967) .................................................................. 8

Metito (Overseas) Ltd. v. General Elec. Co.,
        No. 05 Civ. 9478, 2006 WL 3230301 (S.D.N.Y. Nov. 07, 2006) ........................... 13

Michael Kors Co., Inc. v. Compagnia Internazionale Abbigliamento S.p.A.,
        No. 93 Civ. 8127, 1996 WL 509725 (S.D.N.Y. Sept. 9, 1996)............................... 17

Nanopierce Technologies, Inc. v. Southridge Capital Mgmt. LLC,
        No. 02 Civ. 0767, 2004 WL 2754653 (S.D.N.Y. Dec. 2, 2004)............................... 21

Ouaknine v. MacFarlane,
        897 F.2d 75 (2d Cir. 1990)....................................................................................... 21

Overseas Programming Companies, Ltd. v.Cinematographische Commerz-Anstalt,
        684 F.2d 232 (2d Cir. 1982)..................................................................................... 13

Patel v. Patel,
    497 F. Supp. 2d 419 (E.D.N.Y. 2007) ........................................................ 6, 7, 8, 9

Philip Morris USA Inc. v. Veles Ltd.,
    No. 06 CV 2988, 2007 WL 725412 (S.D.N.Y. March 12, 2007)............................ 9

Piper Aircraft Co. v. Reyno,
    454 U.S. 235, 102 S.Ct. 252 (1981)................................................ 11, 12, 17

Powers v. British Vita, P.L.C.,
    57 F.3d 176 (2d Cir. 1995)............................................................ 21

Premier Lending Servs., Inc. v. J.L.J. Assocs.,
    924 F. Supp. 13 (S.D.N.Y. 1996) ...................................................... 10

Rose v. Simms,
    No. 95 Civ. 1466, 1995 WL 702307 (S.D.N.Y. Nov. 29, 1995) ........................ 21

Royalty Network, Inc. v. Dishant.com, LLC,
    - F. Supp. 2d -, No. 08 Civ 8558, 2009 WL 2252496 (S.D.N.Y. July 29, 2009) ..................... 6

Rudetsky v. O'Dowd,
    660 F. Supp. 341 (E.D.N.Y. 1987) ..................................................... 13

SEC v. Alexander,
    No. 00 Civ. 7290, 2003 WL 21196852 (S.D.N.Y. May 20, 2003)............................ 8

Semi Conductor Materials, Inc. v. Citibank Int'l PLC,
    969 F. Supp. 243 (S.D.N.Y. 1997) ...................................................... 8

Sunward Elec., Inc. v. McDonald,
    362 F.3d 17 (2d Cir. 2004)............................................................. 8

Travelers Property Cas. Co. of America v. DHL Danzas Aur & Ocean,
    No. 05 Civ. 6303, 2006 WL 1443201 (S.D.N.Y. May 23, 2006)............................ 18

U.S. v. Montreal Trust Co.,
    358 F.2d 239 (2d Cir. 1966)........................................................... 10

U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, L.L.C.,
    554 F. Supp. 2d 523 (S.D.N.Y. 2008).................................................... 7

Warck-Mesiter v. Diana Lowenstein Fine Arts,
    7 A.D.3d 351, 775 N.Y.S.2d 859 (1st Dep't 2004)........................................ 8

Whitiker v. American Telecasting, Inc.,
    261 F.3d 196 (2d Cir. 2001).......................................................................... 6, 7

Wiwa v. Royal Dutch Petroleum Co.,
    226 F.3d 88 (2d Cir. 2000)............................................................................ 14


**Statutes**

CPLR § 301.......................................................................................................... 9

CPLR § 302(a) ................................................................................................... 9, 10

CPLR § 302(a)(1) ...................................................................................... 2, 6, 7, 10


**Federal Rules**

Fed R. Evid. 902(3)............................................................................................... 4


**Other Authorities**

Brand and Jablonski, Forum Non Conveniens at 127 (Oxford Univ. Press 2007),
    reproduced at:
    http://books.google.com/books?id=KDzb16KAs_cC&pg=PA127&lpg=PA127&dq=italian+co
    urt+congestion&source=bl&ots=FdF8wPExwR&sig=BZ8KoCyYHDc9WRGkpLh3ADzQTc
    A&hl=en&ei=P3WgSu_UFMfUlAfr_q24DQ&sa=X&oi=book_result&ct=result&resnum=3#
    v=onepage&q=&f=false ...................................................................................... 15

Alexander, Global Trends in Mediation, 2d ed. at 260 (Kluwer Law Int'l 2006),
    reproduced at:
    http://books.google.com/books?id=_gq6iIxcyVgC&pg=PA260&lpg=PA260&dq=italian+cour
    t+congestion&source=bl&ots=Zw37N9p5qA&sig=qCyOHhyghwY_QTbB0_btrTe2gsk&hl=e
    n&ei=hHigSvLAHMyg8QaxpKXfDw&sa=X&oi=book_result&ct=result&resnum=3#v=onep
    age&q=italian%20court%20congestion&f=false ................................................ 15

Plaintiffs Ermanno Trabucco and Angelina Panvini respectfully submit this memorandum of law in opposition to defendants' motion to dismiss the amended complaint. Because there is no merit to defendants' arguments, the motion must be denied.

### Preliminary Statement

This case is about a bank that *sold* 50,000 shares of a stock that is traded on the New York Stock Exchange even though it was instructed by its customer, Dr. Trabucco, to *buy* 50,000 shares to add to the 100,000 shares of that stock already in his account. There is no dispute about this -- the order from Dr. Trabucco to buy the shares was recorded by the bank in the normal course. Dr. Trabucco discovered the error when he later called the bank to transfer all 150,000 of his shares. He immediately demanded that the bank restore his shares. The bank acknowledged the error but asked him for permission to use money in his account to make the purchase. The bank officer claimed this would expedite the process and promised that the bank would repay the money, but the bank has refused to do so, necessitating this lawsuit. The amount of plaintiffs' loss is over $700,000.

Defendants' principal bases for moving to dismiss are *forum non conveniens* and a lack of personal jurisdiction. They argue that they are Italian entities and the account in question was located in Italy, and Intesa Sanpaolo Private Banking S.p.A. ("Private Banking") argues it has no physical presence in this country. Dr. Trabucco and his wife, however, are American citizens and at all relevant times have been New York residents. Dr. Trabucco, who managed the account, is legally blind, confined to a wheelchair, requires supplemental oxygen, has a tracheotomy for a ventilator and requires a 24-hour attendant. He is physically incapable of traveling to Italy so he cannot sue defendants there. The only place he can sue them is here. Moreover, the Italian courts are notoriously slow and it would take many more years to resolve

the case there than here.  In addition, there are very few witnesses and documents, and it will not be unduly burdensome for the defendants, which are the largest Italian bank and its wholly owned subsidiary, to litigate against their New York based customers here.  In short, all the public and private factors relevant to the *forum non conveniens* issue militate in favor of deferring to Dr. Trabucco's choice of his home forum, and therefore the *forum non conveniens* motion must be denied.

As for personal jurisdiction, Private Banking entirely ignores the abundant evidence of its New York contacts in connection with the transaction at issue.  It transacts business in New York for purposes of CPLR § 302(a)(1) because, among other things, it regularly communicated with Dr. Trabucco in New York about his and his wife's accounts, plaintiffs executed the account agreement sued upon in New York, Dr. Trabucco made the phone calls from New York about the trades in issue, and the trades themselves were executed in New York on the New York Stock Exchange.

Defendant Intesa Sanpaolo S.p.A. ("Intesa"), which wholly owns Private Banking, also argues it cannot be liable for breach of contract because the contract was between plaintiffs and Private Banking, but it is not at all clear that these are distinct corporate entities, and in any event, no one from either institution explained to Dr. Trabucco that he could no longer look to Intesa for any claims he might have.  Despite the alleged transfer of his account from Intesa to Private Banking, the person who handled plaintiffs' accounts did not change.  Finally, defendants argue that fraud is not adequately pleaded, but the amended complaint sets forth sufficient detail, particularizing the defendants' statements inducing Dr. Trabucco to permit use of his money to buy back the stock when defendants never intended to pay him back, as promised.

The Court should deny defendants' motion to dismiss so that plaintiffs can finally recover the funds for which defendants have already admitted liability.

### Statement of Facts

As alleged in the amended complaint, Dr. Trabucco opened an account with Banca Commerciale Italiana ("BCI"), a predecessor company to Intesa, over 30 years ago, and has had an account with BCI and its successor banks ever since.  (AC ¶ 8.)[1]  Some years ago, the bank had tried to persuade Dr. Trabucco to transfer his account to its private bank, but he declined. Later on, however, the bank told him that it was going to transfer his account anyway because, they said, the private bank would provide better service.  (Trabucco Aff. ¶ 3-4.)  No one told him that, after the transfer, his account would be handled henceforth by a totally different corporation from Intesa, namely Private Banking.  Nor did anyone tell him that, unlike Intesa and its predecessors, Private Banking did not have a branch office located in New York.  Moreover, the person at the bank handling plaintiffs' account, who had been handling their account since it was at BCI, did not change even after Private Banking took over the account, which further led Dr. Trabucco to believe that Intesa remained responsible for his account.  (AC ¶ 8; Trabucco Aff. ¶ 4.)

The bank sent Dr. Trabucco account forms and related agreements (Ex. A to Trabucco Aff.) in March 2005 when he was in the hospital in New York, passing in and out of a coma. The papers were brought to him to sign at the hospital.

On or about February 22, 2007, Dr. Trabucco spoke by phone from his residence in New York with Mr. Sito of Private Banking and instructed him to buy 50,000 shares of Newmont Mining Corp. ("Newmont") to add to the 100,000 shares already in the account.  Dr. Trabucco's order was to buy at the market price, which was then approximately $47 per share.  This phone

---

[1] He owns the account jointly with his wife, co-plaintiff Angelina Panvini.  "AC" refers to the amended complaint.

call was recorded by the bank. In contravention of this instruction, Mr. Sito actually sold 50,000 shares from the account instead of buying them. Mrs. Vitali, Head of Sales of Private Banking, also admitted in a letter to Dr. Trabucco dated February 20, 2008 that the bank had made this fundamental error. (Trabucco Aff, Ex. D.) Thus, there is no dispute that the error occurred. This transaction was executed in New York over the New York Stock Exchange. As a result, the account was left with only 50,000 shares instead of the 150,000 it was supposed to have. The price at which the shares were sold was about $47.5745 per share, for a total of about $2,378,725.[2]

On or about November 1, 2007, Dr. Trabucco called and faxed an instruction from his home in New York to the bank to transfer 150,000 shares of Newmont, the amount he thought was in the account, to a broker in the United States, whom he intended to instruct to sell the stock. (AC ¶ 13.)[3] He then learned from the bank that the account only had 50,000 shares. After learning of the error, Dr. Trabucco spoke with both Mr. Sito and Mr. Scialoia of Private Banking and demanded that the error be corrected by replacing the missing 100,000 shares. Mr. Scialoia agreed to do so, but he claimed that it would be easier and faster if the bank could use the plaintiffs' funds already in their account to buy the 100,000 shares, and he promised that the bank would pay plaintiffs' back. At the time, Newmont was trading at about $54 per share,

---

[2] Mrs. Vitali has submitted a "declaration" on this motion, but it should be stricken for failure to comply with Fed R. Evid. 902(3), which requires that Mrs. Vitali's signature be certified by an American consular official or a diplomatic or consular official of her foreign country. Indeed, "[t]o meet the standards for self-authentication under Fed. R. Evid. 902(3), a foreign affidavit must generally be accompanied by a 'final certification,' by either an embassy or consular agent of the United States or a diplomatic or consular official of the foreign country, as to the genuineness of the signature and official position of the attesting person." BS Sun Shipping Monrovia v. Citgo Petroleum Corp., 509 F. Supp. 2d 334, 344 (S.D.N.Y. 2007). Further, her declaration is unsworn, as is that of Gianluca Corrias, and should be stricken for that reason as well.

[3] While not relevant to the issues raised on this motion, the defendants have contended that, under the account agreement, Dr. Trabucco was supposed to bring any errors to the attention of the bank within 60 days of receipt of his account statement. (Vitali Decl. ¶ 22-23.) This provision is not implicated because the bank sent the documents to his old address even though he had informed the bank of his new address, and so Dr. Trabucco had not received them by November 1, 2007. Dr. Trabucco thus did not learn of the error until November. (Trabucco Aff. ¶ 10.)

about $7 per share more than in February when the buy order had originally been given.  Dr. Trabucco agreed to allow his and his wife's funds to be used because he trusted that the bank would comply with its promise to repay the money.  (AC ¶ 14; Trabucco Aff. ¶ 14.)  The bank then bought, in New York over the New York Stock Exchange, 100,000 shares of Newmont on November 6-8, 2007 for an average price of about $54.6633.[4]

Notwithstanding their admitted error and the clear promise to repay plaintiffs for the use of his funds, the defendants have refused to comply with their obligations and promises.  As a result, plaintiffs have been directly damaged in the amount of over $700,000, the difference between the price of Newmont in February 2007, when the error was made, and November 2007, when the stock was replaced.  They have also been damaged another $30,000, the amount of the dividends issued on those 100,000 shares between February and November that they should have received.  (AC ¶ 20.)[5]  The evidence further establishes that the defendants never had any intention of reimbursing these funds, despite their promise and legal obligation to do so.  In short, the bank has acknowledged its error and promised to repay Dr. Trabucco, but having taken his money, the bank refused to return the money it owes him.

## ARGUMENT

### I.    THIS COURT HAS PERSONAL JURISDICTION OVER PRIVATE BANKING

Private Banking's primary argument in support of dismissing the amended complaint is that this Court lacks personal jurisdiction over it.  That argument is plainly incorrect, for there is abundant evidence that Private Banking transacts business in New York and that the claims in this case arose in substantial part out of its contacts with New York.  Accordingly, the

---

[4] There is a typographical error in paragraph 15 of the amended complaint identifying the year of the transaction as 2008.  It was 2007.

[5] Plaintiffs are also entitled to interest, attorney's fees and punitive damages under applicable law.

requirements of New York's long-arm statute, CPLR § 302(a)(1), are satisfied and the amended complaint meets the constitutional minimum contacts requirements.  The motion should be denied.

Defendants devote more than half of their personal-jurisdiction section to arguing that (a) Private Banking does not "do business" in New York under CPLR § 301 so there is no jurisdiction here (Deft. Br. Point I(A)) and (b) the presence in New York of the corporate parent does not confer jurisdiction over the subsidiary (Deft. Br. Point I(C).)  Plaintiffs do not contend there is jurisdiction for either of these reasons and, therefore, will not address these points.  However, there unquestionably is personal jurisdiction under CPLR § 302(a)(1), the "transacting business" provision.

Where a party challenges personal jurisdiction before discovery, as here, "a plaintiff need only make a 'prima facie showing' that jurisdiction exists, and a plaintiff meets its burden by pleading good faith allegations, sufficient, if proven to establish jurisdiction." Royalty Network, Inc. v. Dishant.com, LLC, - F. Supp. 2d -, No. 08 Civ. 8558, 2009 WL 2252496, at *3 (S.D.N.Y. July 29, 2009) (citations omitted); see also Whitiker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (stating that a plaintiff meets its burden of establishing personal jurisdiction against a defendant by making a prima facie showing of jurisdiction through affidavits and other supporting materials).  At this stage, the court "construes the pleadings and any other materials it considers in the light most favorable to the plaintiff, resolving all ambiguities in its favor." Royalty Network, 2009 WL 2252496, at *4 (citing A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993)).

Personal jurisdiction over a non-resident defendant in a federal diversity case is determined by the law of the forum state.  See Patel v. Patel, 497 F. Supp. 2d 419, 420 (E.D.N.Y.

2007) (citing Whitiker, 261 F.3d at 208).  In this case, New York's long-arm statute, CPLR §

302(a)(1), clearly establishes that this Court has personal jurisdiction over Private Banking.  As

this Court has recently held in a case with remarkably similar facts, CPLR § 302(a)(1) permits a

court to exercise personal jurisdiction over an out-of-state party if it "transacts any business

within the state" and if the "cause of action aris[es] from" the business contacts.  U.S.

Commodity Futures Trading Comm'n v. Amaranth Advisors, L.L.C., 554 F. Supp. 2d 523, 529

(S.D.N.Y. 2008) (Chin, J.) (citation and internal quotation omitted).  In Amaranth Advisors, a

Canadian placed two trades from Canada over the New York Mercantile Exchange, and the issue

was whether by so doing he "purposefully availed himself of the privilege of conducting

business in New York when he placed the trades from Canada."  Id. at 530.  This Court said he

was "clearly transacting business within the state, albeit by telephone from Canada, which is

sufficient to support personal jurisdiction under New York long-arm statute."  Id.  Here as in

Amaranth Advisors, the stock transactions were done on an American stock exchange but

directed from abroad.  Unlike that case, the investor lives here, not abroad, and the investor

requested the transaction by phone call from New York.  The instant case is stronger than

Amaranth Advisors for additional reasons because Private Banking sent the account agreement

for plaintiffs to sign to New York and the plaintiffs executed the agreement in New York.

Private Banking also sent a declaration to the plaintiffs for them to sign in New York stating that

they were nonresidents of Italy, as well as U.S. tax documents.  All such documents were sent to

New York and executed by plaintiffs in New York.  (Trabucco Aff. ¶ 8.)

     The existence of a longstanding contractual relationship with the New York plaintiffs

and the execution in New York of the contract sued upon are also significant factors militating in

favor of personal jurisdiction in New York.  Patel, 497 F. Supp. 2d at 427 (quoting Sunward

Elec., Inc. v. McDonald, 362 F.3d 17, 22-23 (2d Cir. 2004)).See also SEC v. Alexander, No. 00
Civ. 7290, 2003 WL 21196852, at *2 (S.D.N.Y. May 20, 2003) (court had personal jurisdiction
over Greek citizen in Greece who carried out trades over the New York Stock Exchange by
telephone through a Greek broker).  Here, the relationship between Dr. Trabucco, based in New
York, and the Italian bank had been ongoing for about 30 years. (Trabucco Aff. ¶ 8.)

 Private Banking's argument basically rests on a claim that it has no physical presence
here, but this Court noted the U.S. Supreme Court's observation that the "inescapable fact of
modern commercial life [is] that a substantial amount of business is transacted solely by mail and
wire communications across state lines," and jurisdiction "may not be avoided merely because
the defendant did not *physically* enter the forum State."  Burger King Corp. v. Rudzewicz, 471
U.S. 462, 476, 105 S. Ct. 2174, 2184 (1985) (emphasis in original).  Thus, Private Banking's
argument at pages 12-13 of its brief that jurisdiction cannot be conferred by phone calls and
mailings is legally incorrect, and in any event the New York contacts here are far more
substantial than just calls and mailings.  Because Private Banking's activities in New York were
far greater than in the cases it cites at pages 12-13 of its brief, those cases do not require
dismissal for lack of jurisdiction. See McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377,
283 N.Y.S.2d 34 (1967) (plaintiff-agent could not predicate jurisdiction on own activities in New
York; no jurisdiction where defendant's New York contacts limited to employee spending a total
of less than one day in New York); Warck-Mesiter v. Diana Lowenstein Fine Arts, 7 A.D.3d
351, 352, 775 N.Y.S.2d 859, 860 (1st Dep't 2004) (phone, fax and email communications
insufficient jurisdictional predicates "under the circumstances herein," which are not identified);
Semi Conductor Materials, Inc. v. Citibank Int'l PLC, 969 F. Supp. 243 (S.D.N.Y. 1997) (simply
sending fax into New York without more insufficient for jurisdiction).  Furthermore, in Patel,

497 F. Supp. 2d 419, another case relied on by the defendants, there was no allegation that the contract was executed in New York nor that part of the agreement was to be performed in New York, unlike here; indeed, the factors cited in Patel, discussed above, strongly support jurisdiction here.  Finally, two cited cases by defendants deal only with CPLR § 301, the "doing business" provision, and have no application here.  Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039 (2d Cir. 1990); Cardone v. Jiminy Peak, Inc., 245 A.D.2d 1002, 667 N.Y.S.2d 82 (3d Dep't 1997).

Many other cases have made the point that personal jurisdiction can be established by just a single transaction under CPLR § 302(a)(1), see, e.g., Philip Morris USA Inc. v. Veles Ltd., No. 06 CV 2988, 2007 WL 725412, at *4 (S.D.N.Y. March 12, 2007), and that  physical presence by the defendant in New York during the activity is not necessary.  See, e.g., Patel, 497 F. Supp. 2d at 427 (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)); see also Bluestone Capital Partners, L.P. v. MGR Funds, Ltd., No. 98 Civ. 3128, 1999 WL 322658, at *4 (S.D.N.Y. May 20, 1999) ("CPLR 302(a) is a 'single act statute,' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York provided that the cause of action arises out of the defendant's New York transactions and the defendant's activities in New York are purposeful.").

While Private Banking suggests that that it did not purposefully avail itself of the privilege of conducting business in New York, in actuality the facts prove precisely the opposite – Private Banking actively pursued a contractual relationship with the plaintiffs in New York (not the other way around) and, in furtherance of that effort, sent to them in New York the account agreement and other documents evidencing the bank's knowledge that they were

transacting business with United States and New York residents.  Private Banking also utilized a New York broker to effectuate the trades in issue on the New York Stock Exchange.

Private Banking also argues that plaintiffs "chose" to maintain a bank account in Italy "knowing that Private Banking maintained no office or employee in the United States, and that all of Private Banking's offices were located in Italy." (Deft. Br. at 11.)  To the contrary, plaintiffs had been dealing for many years with a bank that did maintain an office in New York. The transfer of the account to the private bank was the bank's idea, not the plantiffs', and no one ever told Dr. Trabucco this meant that he would be dealing with an entity with no presence in New York.  Dr. Trabucco did not know until Private Banking filed papers in this lawsuit that Private Banking's position is that it has no presence in New York.  (Trabucco Aff. ¶ 4.)

Defendants mention the need to comport with due process, but the constitutional requirements of personal jurisdiction are met if section 302(a) is satisfied because the jurisdictional reach of CPLR § 302(a)(1) is narrower than what the Due Process Clause permits. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 105 (2d Cir. 2006) (citing United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir. 1966)).

Because there is clear evidence that Private Banking transacted business in New York, and the transaction at issue arose out of New York, Private Banking's motion to dismiss for lack of personal jurisdiction must be denied.[6]

---

[6] Private Banking states in passing and without citation to authority, that the fact that the account agreement has an Italian choice-of-law provision shows Private Banking did not intend to avail itself of the benefits of New York law and hence there is no jurisdiction. (Deft. Br. at 13.)  The argument ignores the overwhelming facts and law discussed above.  In any event, the mere fact that the contract has an Italian choice of law clause alone is not dispositive.  See Premier Lending Servs., Inc. v. J.L.J. Assocs., 924 F. Supp. 13, 17 (S.D.N.Y. 1996).  Rather, the Court must look at all the circumstances, and these circumstances clearly confer jurisdiction on the Court.

## II.    THE MOTION TO DISMISS ON GROUNDS OF *FORUM NON CONVENIENS* MUST BE DENIED

Defendants argue that plaintiffs' choice of their home forum in New York should be disregarded and the case should be pursued in Italy, even though plaintiffs live in New York and are U.S. citizens, Dr. Trabucco made the call from New York to direct the purchase of stock at issue, the stock transactions at issue were executed in New York, defendant Intesa has a physical presence in New York (it has a branch in Manhattan), and Dr. Trabucco is physically incapable of traveling to Italy.  Granting the motion would be tantamount to ruling against plaintiffs on the merits inasmuch as they could not bring their claim in Italy.

In determining a *forum non conveniens* motion, the court first determines the degree of deference to give the plaintiffs' choice of forum.  Second, it considers whether there is an adequate alternative forum.  Third, it weighs the public and private interests implicated in the choice of forum.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, 102 S.Ct. 252 (1981); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc).  Each prong of this test overwhelmingly favors plaintiffs' choice of this forum.

A.  Plaintiffs' Choice of Forum is Entitled To Great Deference as a Matter of Law

Defendants incorrectly argue that plaintiffs' choice of a New York forum is entitled to little deference.  In fact, the law clearly establishes the opposite -- that plaintiffs' choice of forum, particularly when it is plaintiffs' home forum, is entitled to great deference and should be disturbed only in extreme circumstances.  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  Gilbert, 330 U.S. at 508. The Second Circuit has interpreted this to mean that a district court should begin with the assumption that the plaintiff's choice of forum will stand.  See Iragorri, 274 F.3d at 72.  A

plaintiffs' choice of forum is entitled to great deference when the plaintiff has sued in his home forum because it is presumed to be convenient. See id. (citing Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); Piper Aircraft Co. v. Reyno, 454 U.S. at 255-56, 256 n. 23 (1981)).

"[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens." Id. (footnote omitted).  The following factors are considered when determining whether to favor a plaintiff's choice of forum:  (i) the convenience of the plaintiff's residence in relation to the chosen forum; (ii) the availability of witnesses or evidence to the forum district; (iii) the defendant's amenability to suit in the forum district; (iv) the availability of appropriate legal assistance; (v) other reasons relating to convenience or expense; and (vi) whether the plaintiff's choice of forum was motivated by forum-shopping reasons.  Id.

All of these factors support plaintiffs' choice of forum in New York.  As residents of New York, plaintiffs have a bona fide connection to this forum.  Not only is New York the most convenient forum for plaintiffs to litigate this case, it is the *only* forum in which they are able to litigate because Dr. Trabucco's disabilities make it impossible for him to prosecute this action in Italy.  He is 83 years old, blind, confined to a wheelchair and tethered to a ventilator at night.  He requires a 24-hour attendant.  He is unable to travel to Italy.  (Trabucco Aff. ¶ 7.)  The defendants, on the other hand, are the largest bank in Italy and one of its wholly owned subsidiaries.  Defendants ignore all of these facts, which mandate that Dr. Trabucco's choice of forum be given great deference.  See Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d

234, 238 (2d Cir. 2004) ("For an individual of modest means, the obligation to litigate in a foreign country is likely to represent a considerably greater obstacle than for a large business organization--especially one maintaining a business presence in foreign countries.  For this reason, such an individual's choice of the home forum may receive greater deference than the similar choice made by a large organization which can easily handle the difficulties of engaging in litigation abroad."); Rudetsky v. O'Dowd, 660 F. Supp. 341, 347 (E.D.N.Y. 1987) ("The court 'must be alert to the realities of the plaintiff's position, financial and otherwise, and his or her ability as a practical matter to bring suit in the alternative forum.'") (quoting Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 346 (8th Cir.1983)).  As a practical matter, plaintiffs cannot sue in any other forum, whereas defendants have the means to litigate in New York, entitling plaintiffs' choice of forum great deference.

Second, witnesses and documents are easily available in this district.  This case does not involve many documents; principally, there a few account documents, transcripts of a few phone calls, the account agreement and a limited amount of correspondence.  It will not impose a hardship on defendants to produce them here or have them translated.  Indeed, in this modern age where technology eases travel and the transfer of documents, the location of proof has far less significance than other factors when determining whether a forum is inconvenient.  See Overseas Programming Companies, Ltd. v.Cinematographische Commerz-Anstalt, 684 F.2d 232, at 232 n.1 (2d Cir. 1982) ("advances in modern telecommunications and jet travel may further circumscribe a district court's discretion in dismissing a suit on the ground of forum non conveniens."); Metito (Overseas) Ltd. v. General Elec. Co., No. 05 Civ. 9478, 2006 WL 3230301, at *6 (S.D.N.Y. Nov. 07, 2006).  Defendants have not demonstrated that the costs to transfer documents or witnesses would be excessively burdensome, especially in view of their

vast resources.  See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 107 (2d Cir. 2000); see

also Calavo Growers of Cal. v. Generali Belgium, 632 F.2d 963, 969 (2d Cir.1980) (Newman, J.,

concurring) ("It will often be quicker and less expensive to transfer a witness or a document than

to transfer a lawsuit.").

There are also not many relevant witnesses.  While some bank witnesses are located in

Italy, they are able to travel to New York, and the bank has not contended otherwise.  In fact,

Ms. Vitali and Mr. Rinaldi of Private Banking wanted to travel to New York to meet with Dr.

Trabucco to resolve the matter (Trabucco Aff. ¶ 17), so there is no credible issue as to whether

bank personnel can travel to New York.  On the other hand, Dr. Trabucco, plaintiffs' most

essential witness, is unable to travel to Italy. Defendants also have not suggested that the Italian

language is an obstacle to their employees' testimony, and indeed it is worth noting that two of

their employees submitted declarations in English on this motion.

Defendants are also amenable to suit here; indeed, Intesa maintains a branch in New

York and thus cannot conceivably say it is inconvenient for it to litigate here.  Private Banking

was served under the Hague Convention's rules, and neither defendant is contending that service

was improper.  There can be no credible claim that plaintiffs engaged in forum-shopping; as

noted above, they sued in their home forum, where the transactions occurred, and cannot litigate

in Italy.  Obviously, defendants have ready access to competent legal assistance in New York.

Defendants have not shown that litigating in New York would be so inconvenient as to

upset plaintiffs' choice of forum.  Their conclusory statement that it would "impose a substantial

and unfair burden" is insufficient to upset plaintiffs' choice of forum (Deft. Br. pp. 21).  As this

Court observed recently, "[t]he relative inconvenience defendants may face in eventually

transporting and compelling potential witnesses to testify does not outweigh the Court's

deference to [plaintiffs'] forum." Gould Paper Corp. v. Gomez, No. 07 Civ. 6087, 2008 WL

113900, at *3 (S.D.N.Y. Jan. 11, 2008) (Chin, J.).

### B. As a Practical Matter, Italy is Not an Adequate Alternative Forum

While defendants argue that Italy is an adequate alternative forum, even if true this does

not compel dismissal in light of the overwhelming factors favoring keeping the case in the

plaintiffs' chosen forum.

> A defendant does not carry the day simply by showing the existence of an
> adequate alternative forum. The action should be dismissed only if the chosen
> forum is shown to be genuinely inconvenient and the selected forum significantly
> preferable. In considering this point, the court furthermore must balance the
> greater convenience to the defendant of litigating in its preferred forum against
> any greater inconvenience to the plaintiff if the plaintiff is required to institute the
> suit in the defendant's preferred foreign jurisdiction.

Iragorri, 274 F.3d at 74-75.

Defendants cannot meet this burden if for no other reason than that plaintiffs cannot

pursue their claims in Italy.  Furthermore, it is doubtful that Italy is truly an adequate forum, and

it clearly is less adequate than New York.  It is common knowledge that Italian courts are

notoriously slow; indeed, they are so slow that corporate plaintiffs in Europe often file

declaratory judgment actions in Italy to avoid becoming defendants in other European countries.

(Trabucco Aff. ¶ 7).[7]  One empirical study shows that the average civil case in Italy takes 3.5

years to get to trial and about 10 years to complete the first appeal.[8]  This is the real reason that

---

[7] The tactic of corporations filing as declaratory action plaintiffs in Italy to take advantage of the slow Italian courts
is known as the "Italian torpedo."  Brand and Jablonski, Forum Non Conveniens at 127 (Oxford Univ. Press 2007),
reproduced at:
   http://books.google.com/books?id=KDzb16KAs_cC&pg=PA127&lpg=PA127&dq=italian+court+congestion&sour
   ce=bl&ots=FdF8wPExwR&sig=BZ8KoCyYHDc9WRGkpLh3ADzQTcA&hl=en&ei=P3WgSu_UFMfUlAfr_q24D
   Q&sa=X&oi=book_result&ct=result&resnum=3#v=onepage&q=&f=false

[8] Alexander, Global Trends in Mediation, 2d ed. at 260 (Kluwer Law Int'l 2006), reproduced at:
   http://books.google.com/books?id=_gq6iIxcyVgC&pg=PA260&lpg=PA260&dq=italian+court+congestion&source
   =bl&ots=Zw37N9p5qA&sig=qCyOHhyghwY_QTbB0_btrTe2gsk&hl=en&ei=hHigSvLAHMyg8QaxpKXfDw&sa
   =X&oi=book_result&ct=result&resnum=3#v=onepage&q=italian%20court%20congestion&f=false

defendants want this case to be moved to Italy:  they fear the relatively quick justice provided by

an American court.  There is no reason for this Court to indulge defendants in this manner.

      C. <u>Public and Private Interest Factors Weigh Strongly in Favor of Maintaining the Action
in this Forum</u>

      Public interest factors relevant to the *forum non conveniens* analysis include court

congestion, the local interest in having localized controversies decided at home, the unfairness of

imposing the burden of jury service in a forum unrelated to the dispute, and the appropriateness

of trying a case in a forum familiar with the law to be applied.  <u>See</u> <u>Gilbert</u>, 330 U.S. at 508-09.

      The public interest factors weigh in favor of keeping this action in this forum.  As set

forth above, Italian courts are far more congested than in the Southern District of New York, and

a resolution of this case will come far sooner if it remains here.  This case will not be an

imposition on a New York jury because there is a strong nexus to this forum – plaintiffs are U.S.

citizens and longtime New York residents, the underlying stock transactions took place in New

York, one of the defendants is located in New York and the other regularly transacted business

with the plaintiffs in New York.  Defendants' misconduct caused damage to plaintiffs here in

New York.  The United States also has a strong interest in allowing plaintiffs to bring their action

here because plaintiffs are American citizens who reside in New York and who will be unable to

pursue their case in Italy due to Dr. Trabucco's disabilities.  <u>See</u> <u>Henderson v. Metropolitan

Bank & Trust Co.</u>, 502 F. Supp. 2d 372, 380 (S.D.N.Y. 2007) ("the United States has a strong

interest in ensuring that this action is decided on its merits because some of Plaintiffs are United

States citizens and the case involves a large sum of money.  Because, as a practical matter,

Plaintiffs will not be able to pursue their case in the Philippines due to the fee, the United States

has a strong interest in allowing Plaintiffs to bring their action in an American forum. Although

the Philippines also has an interest in adjudicating local disputes and deciding issues of local law, the balance now tilts towards the United States.").

While defendants argue that this dispute requires the application of Italian law, the "need to apply foreign law . . . alone is not sufficient to warrant dismissal." Piper Aircraft, 454 U.S. at 260 n. 29; see also Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 492 (2d Cir.1998); Michael Kors Co., Inc. v. Compagnia Internazionale Abbigliamento S.p.A., No. 93 Civ. 8127, 1996 WL 509725, at *4 (S.D.N.Y. Sept. 9, 1996); Coriander, Inc. v. Eurocompany, S.p.A., No. 89 Civ. 7353, 1991 WL 150623, at *1 (S.D.N.Y. July 29, 1991) ("This District . . . is accustomed to applying foreign law."). Therefore, the public interest factors weigh heavily in favor of plaintiffs' decision to litigate in this forum.

We have already discussed the private interest factors, including "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gilbert, 330 U.S. at 508. We know of no unwilling witnesses, but if there are any, they can be deposed under the Hague Convention to which Italy is a party. The bank can well afford to bring its few witnesses here, and there a very few relevant documents.

Dr. Trabucco's inability to travel to Italy is an overriding private interest factor weighing against defendants' motion. See Altmann v. Republic of Austria, 317 F.3d 954 (9th Cir. 2002), aff'd, 541 U.S. 677, 124 S. Ct. 2240, 159 L.Ed.2d 1 (2004) (requisite foreign travel and significant costs of litigating the action in Austria weighed heavily in favor of retaining jurisdiction in the United States where plaintiff was an elderly United States citizen); Henderson, 502 F. Supp. 2d at 379-80 (finding that the balance of private interest factors tilted towards the

chosen forum where plaintiff would be unable to litigate in the Philippines due to the

extraordinary expense even though most of the relevant witnesses were abroad and would not be

subject to compulsory process in the United States and the cost of transporting those witnesses to

the United States weighed strongly in favor of dismissal); In re Assicurazioni Generali S.p.A.

Holocaust Ins. Litig., 228 F.Supp.2d 348, 366 (S.D.N.Y. 2002).

Defendants cite this Court's decision in ICC Industries, Inc. v. Israel Discount Bank,

Ltd., No. 04 Civ. 6945, 2005 WL 1844616 (S.D.N.Y. July 29, 2005) (Chin, J.), in support of

their motion, but there the plaintiff was fully capable of litigating in the foreign forum and was

clearly forum shopping.  In ICC, the plaintiff had a controlling interest in an Israeli public

company and entered into an agreement to guarantee the company's financial obligations to an

Israeli bank in Israel.  There had already been a proceeding in an Israeli court, which determined

that the plaintiff "sped to file the suit in the court in the USA" in a "deliberate attempt to obtain

jurisdiction in the foreign court and to prevent substantive proceedings in the appropriate place,

Israel, which the parties intended when they signed [their] agreement." ICC Industries, 2005

WL 1844616, at *7 (quotations omitted).  There is no proceeding in Italy in this case, and there

is no issue of forum shopping.  Moreover, ICC did not involve any of the overwhelming private

interest factors present here, particularly plaintiffs' inability to litigate elsewhere.

Defendants have "not made a showing that the public and private factors are so

overwhelmingly in favor of dismissal as to override the deference to be accorded to plaintiffs'

choice of forum." See Travelers Property Cas. Co. of America v. DHL Danzas Aur & Ocean,

No. 05 Civ. 6303, 2006 WL 1443201, at * 2 (S.D.N.Y. May 23, 2006) (Chin, J.).  Therefore,

defendants' motion to dismiss on the grounds of *forum non conveniens* must be denied.

III.   **INTESA'S MOTION TO DISMISS THE CONTRACT CLAIM SHOULD BE DENIED**

Intesa argues that the contract claim should be dismissed as against it because the contract sued upon was between plaintiffs and Private Banking.  The motion should be denied.

For many years, plaintiffs' relationship was with Intesa and its predecessors. During this time, the head of the private bank tried to interest Dr. Trabucco in moving his account to the private bank, but he declined to do so.  A while after that, Intesa unilaterally decided that the plaintiffs' account should be moved to Private Banking supposedly to provide better service, and Dr. Trabucco acquiesced in this move.  No one told Dr. Trabucco that Private Banking was an entirely separate corporation from Intesa and that, unlike the prior banks, it did not have a branch in Manhattan, or that it would argue it was not amenable to being sued here.  (Trabucco Aff. ¶ 4.) Moreover, the person at the bank handling plaintiffs' account, who had been handling the account since it was with Banca Commerciale, did not change, nor did the office where he worked.  Until after this lawsuit was commenced, Dr. Trabucco thought that he was dealing with Intesa, the corporate parent, because his dealings with the bank were unchanged after the transfer.

Since that time, it is not clear that Intesa and Private Banking are as distinct as they claim, and discovery will be necessary to determine whether they are truly separate entities.  For example, after the transactions at issue in this case, Dr. Trabucco closed all of his accounts at Intesa/Private Banking.  He did so by calling Mr. Sito at Private Banking and telling him to close the accounts and instructing him where the holdings should be sent.  Even though Dr. Trabucco's instruction was given to Private Banking, a bond he held in another account was transferred to Dr. Trabucco's designee, J.P. Morgan Chase, by Intesa.  It appears that Intesa and

its wholly owned subsidiary, Private Banking, act as one entity.  Accepting the allegations of the

complaint as true, the amended complaint states a claim for breach of contract against Intesa.

## IV.   PLAINTIFFS ALLEGE A VALID FRAUD CLAIM

Defendants argue that fraud is not pleaded with the particularity required by Rule 9(b) of

the Federal Rules of Civil Procedure.  Their point seems to be that insufficient facts are alleged

to establish fraudulent intent.

The amended complaint adequately pleads facts giving rise to an inference of fraudulent

intent.  As defendants admit, "[g]reat specificity [is] not required with respect to the allegations

of knowledge and scienter." Goldman v. Belden, 754 F.2d 1059, 1070 (2d Cir. 1985). See also

(Deft. Br. pp. 24).  After Dr. Trabucco discovered on November 1, 2007 that the bank had

improperly sold, and not bought, the 50,000 shares of Newmont Mining stock, the bank

investigated and confirmed that an error had been made.  (AC ¶ 13.)  Dr. Trabucco then spoke to

Mr. Sito and Mr. Scialoia, who agreed to buy the 100,000 shares, but said that it would be easier

to use funds already in the Trabucco account, and that the bank would reimburse the plaintiffs.

(AC ¶ 14; Trabucco Aff. ¶ 14.)  In reliance on this promise, Dr. Trabucco permitted use of his

money; contrary to defendants' assertion at page 24 of their brief, this alone was an unlawful

benefit to the bank.  Because the price of the stock had increased about $7 per share, the

transaction resulted in a loss to plaintiffs of about $700,000, but the bank has refused to pay the

money.

Defendants argue that the fraud claim is "part and parcel of their breach of contract

claim" (Deft. Br. pp. 24-25), yet that is not the case.  "While it is true that a failure to perform

promises of future acts is merely a breach of contract to be enforced by an action in contract,' an

action for fraud will lie when a promise was actually made with a preconceived and undisclosed

20

intention of not performing it." <u>Rose v. Simms</u>, No. 95 Civ. 1466, 1995 WL 702307, at *8 (S.D.N.Y. Nov. 29, 1995) (citations omitted). "A false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties." <u>Graubard Mollen Dannett & Horowitz v. Moskovitz</u>, 86 N.Y.2d 112, 122, 653 N.E.2d 1179, 1184, 629 N.Y.S.2d 1009, 1014 (1995). Here, the facts demonstrate an intent to defraud. They establish that the bank knew it had made an error in selling, promised to pay the plaintiffs back after restoring the shares to the account, but immediately reneged on that promise. <u>See</u> <u>Powers v. British Vita, P.L.C.</u>, 57 F.3d 176, 185 (2d Cir. 1995) ("intent may be found when a defendant violates an agreement so maliciously and so soon after it is made that his desire to do so before he entered into the agreement is evident"); <u>Ouaknine v. MacFarlane</u>, 897 F.2d 75, 82 (2d Cir. 1990) ("These facts asserting that Ouaknine was promised his money from the first proceeds of the imminent sale, that the money was available shortly after the promise, but that Ouaknine was not given his share, establish the requisite strong inference that defendants never did intend to pay Ouaknine from the first proceeds"); <u>Nanopierce Technologies, Inc. v.</u> <u>Southridge Capital Mgmt. LLC</u>, No. 02 Civ. 0767, 2004 WL 2754653, at *8 (S.D.N.Y. Dec. 2, 2004) (where defendant "almost immediately thereafter" began taking actions inconsistent with the agreement at issue, the allegations were sufficient to support an inference of intent to defraud).

The bank further knew that, because of his infirmities that prevented him from traveling, Dr. Trabucco would not be able to pursue a claim in Italy and clearly hoped it would be able to keep the money. This is an additional factor supporting a claim of fraudulent inducement. Finally, as discussed above, because the distinction in fact between Intesa and Private Banking

is not so clear as Intesa asserts, the amended complaint states an adequate fraud claim against Intesa as well.

In short, plaintiffs' allegations of fraud are sufficient and the motion to dismiss the fraud claim must be denied.  If, notwithstanding the foregoing, the Court determines that the claim is not pleaded with sufficient particularity, plaintiffs ask for leave to replead.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss must be denied in its entirety.

Dated: New York, New York
       September 11, 2009

ORANS, ELSEN, LUPERT & BROWN LLP
Attorneys for the Plaintiffs

By:_____
    Robert L. Plotz (RP-4567)
    Leslie A. Lupert (LL-0955)
    875 Third Avenue, 28th Floor
    New York, New York 10022
    (212) 586-2211