```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ERMANNO TRABUCCO and            :
ANGELINA PANVINI,
                                :
             Plaintiffs,
                                :
       - against -
                                :
INTESA SANPAOLO, S.p.A. and
INTESA SANPAOLO PRIVATE BANKING, :
S.p.A.,
                                :
             Defendants.
                                :
- - - - - - - - - - - - - - - - - -x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/10
```

**OPINION**

09 Civ. 01046 (DC)

**APPEARANCES:**    ORANS, ELSEN, LUPERT & BROWN LLP
                        By:  Robert L. Poltz, Esq.
                             Leslie A. Lupert, Esq.
                    875 Third Avenue, 28th Floor
                    New York, New York  10022
                        Attorneys for Plaintiffs

                    CROWELL & MORING LLP
                        By:  Daniel L. Selenko, Esq.
                             Rodney M. Zerbe, Esq.
                    590 Madison Avenue, 20th Floor
                    New York, New York  10022
                        Attorneys for Defendants

**CHIN, District Judge,**

        This diversity action was instituted for breach of

contract and fraud.  Defendants move, pursuant to Fed. R. Civ. P.

12(b)(2), to dismiss the complaint for lack of personal

jurisdiction.  They also move, pursuant to Fed. R. Civ. P.

12(b)(6), to dismiss the action for failure to state a claim upon

which relief can be granted.  For the reasons set forth below,

the motion is denied in part and granted in part.

### BACKGROUND

## I.  The Facts

The facts alleged in the complaint are assumed to be true for purposes of this motion.

### A.  The Parties

Plaintiffs Ermanno Trabucco and Angelina Panvini (the "Trabuccos") are citizens of the United States, domicilaries of Nassau County, New York, and joint owners of a brokerage account managed by Intesa Sanpaolo Private Banking, S.p.A. ("Private Banking").  (Am. Compl. ¶¶ 2-3).  Private Banking is a wholly-owned subsidiary of Intesa Sanpaolo, S.p.A. ("Intesa"), an Italian Banking corporation.  (Id. ¶ 5).  Private Banking does not maintain an office in the State of New York.  (Id.).  The parent corporation, Intesa, maintains a branch office in New York and is licensed to conduct banking business in New York.  (Id.).

The Trubuccos opened an account with Banca Commerciale Italiana ("BCI"), a predecessor company to Intesa, over 30 years ago.  (Id. ¶ 8).  Since that time the Trabuccos have maintained an account with BCI and its successor companies.  (Id.).  These entities have regularly sent statements and other account-related information by fax and mail to the Trabuccos' home in New York.  (Id. ¶ 12).  By March 2005 Intesa had replaced BCI as the parent corporation of the banking group and began the process of transferring the Trabucco account to Intesa's Private Banking

- 2 -

subsidiary.  (Id.).  As part of the transfer process, Private Banking sent the account agreement that governed the relationship during the disputed period to the Trabuccos' address in New York. (Id.).  Among these documents were U.S. tax documents and a document that declared the Trabuccos to be non-residents of Italy. (Id.).

### B.   The February 22, 2007 Sale of Newmont Stock

On or about February 22, 2007, Trabucco spoke by phone from his residence in Nassau County, New York, with a Private Banking representative in Italy.  Trabucco instructed the representative to buy 50,000 shares of Newmont Mining Corp. ("Newmont") at the market price, which was then approximately $47 per share.  (Id. ¶ 9).  Instead of fulfilling Trabucco's order to buy 50,000 shares, Private Banking sold 50,000 shares from the 100,000 Newmont shares already present in the Trabuccos' account. (Id. ¶ 10).  The 50,000 shares were sold at a price of $47.5745 for total proceeds of $2,378,725.  (Id.).  The sale of Newmont shares was executed over the New York Stock Exchange ("NYSE") by a New York-based broker hired by Private Banking.  (Id. ¶ 11). Once the sale of 50,000 Newmont shares was effectuated, Trabucco held 50,000 shares of Newmont -- instead of the 150,000 shares that he would have held had Private Banking properly executed the buy order.  (Id. ¶ 13).

## C.     **Trabucco's Discovery of the Error and Private Banking's Reaction**

Trabucco did not discover the mistake until November 1, 2008, when he sent a fax instructing Private Banking to transfer a total of 150,000 shares of Newmont stock to a broker in New York.  (Id.).  When Private Banking informed Trabucco that he only held 50,000 shares of Newmont, Trabucco requested that a Private Banking representative check the recording of Trabucco's February 22, 2007 telephone order.  (Id. ¶ 14).  The representative confirmed that Trabucco requested that Private Banking buy -- not sell -- 50,000 shares of Newmont on that date. (Id.).  Private Banking has confirmed -- orally and in writing -- that the bank erred when it sold rather than purchased 50,000 Newmont shares on February 22, 2007.  (Id. ¶ 17).

Trabucco demanded that Private Banking correct the error by replacing the missing 100,000 shares of Newmont at the February 22, 2007 market price.  (Id. ¶ 14).  Private Banking agreed to do so but told Trabucco that this replacement would be more quickly and easily effectuated if Trabucco permitted Private Banking to purchase the missing shares with funds already in the Trabuccos' account and then, at a later date, reimburse the Trabuccos for the per share cost in excess of the February 22, 2007 market price.  (Id. ¶ 13).  Although Private Banking made representations to Trabucco that he would be compensated for the use of the Trabuccos' personal funds to correct the mistake, the

- 4 -

Trabuccos allege that Private Banking never intended to compensate the Trabuccos.  (Id. ¶ 18).  Between the 6th and 8th of November 2008, Private Banking purchased 100,000 shares of Newmont (using the Trabuccos' funds) for an average price of $54.6633 -- about $7 above the February 22, 2007 market price. (Id. ¶ 15).  Private Banking has not compensated the Trabuccos for the losses resulting from the mistaken trade.  (Id. ¶ 16).

## II.  **Prior Proceedings**

The Trabuccos commenced this action against Intesa by filing a summons and complaint on February 5, 2009.  On May 8, 2009, Trabucco filed an amended complaint, naming both Intesa and Private Banking as defendants.  The Trabuccos claim that the mistaken trade constitutes a breach of the account agreement and both Intesa and Private Banking should be held liable for the resulting damages.  (Id. ¶¶ 21-25).  The Trabuccos also claim that Private Banking and Intesa should be held liable for fraudulently inducing the Trabuccos to provide money to correct the mistaken trade.  (Id. ¶¶ 26-30).

## DISCUSSION

First, I address the question whether this Court has personal jurisdiction over Private Banking and Intesa.  I conclude that it does.  Next, I address defendants' forum non conveniens argument and find that the Southern District of New York is an appropriate forum to hear the case.  Then, I address the substantive claims relating to breach of contract and fraud.

I conclude that the Trabuccos have stated a contract claim for relief as to Private Banking, but have failed to state a fraud claim as to Private Banking.  Finally, I address Intesa's argument that the Trabuccos have not alleged facts that would establish that Intesa may be held accountable for Private Banking's acts or omissions.  I reject the argument.

## I.   **Personal Jurisdiction**

### A.   **Applicable Law**

To determine whether the court may exercise personal jurisdiction over a non-domiciliary, a district court engages in a two-part analysis.  First, the court must determine whether jurisdiction exists under the laws of the forum state (here, New York).  Second, the court must determine whether the exercise of jurisdiction under state law satisfies federal due process requirements.  <u>See</u> <u>Bank Brussels Lambert v. Fiddler Gonzalez &amp; Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999).

#### 1.   **Standard on 12(b)(2) Motion to Dismiss**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.  <u>Kernan v. Kurz-Hastings, Inc.</u>, 175 F.3d 236, 240 (2d Cir. 1999) (citation omitted).  At the pleadings stage, a plaintiff is required only to make a prima facie showing of jurisdiction.  <u>DiBella v. Hopkins</u>, 187 F. Supp. 2d 192, 198 (S.D.N.Y. 2002).  The Court must "construe all of the pleadings and affidavits 'in the light

- 6 -

most favorable to plaintiff' and must resolve doubts in the plaintiff's favor." <u>Jacobs v. Felix Bloch Ergen Verlag fur Buhne Film und Funk KG</u>, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (quoting <u>Hoffritz for Cutlery, Inc. v. Amajac, Ltd.</u>, 763 F.2d 55, 57 (2d Cir. 1985)).

### 2. **N.Y. C.P.L.R. § 302(a)(1)**

C.P.L.R. § 302(a)(1) provides a New York court with long-arm jurisdiction over a person who "transacts any business within the state." N.Y. C.P.L.R. § 302(a)(1). "The key inquiry is whether the defendant purposefully availed itself of the benefits of New York's laws." <u>Courtroom Television Network v. Focus Media, Inc.</u>, 264 A.D.2d 351, 695 (N.Y. App. Div. 1st Dep't 1999).

A cause of action "arising from" the acts of a person who "transacts any business within the state or contracts anywhere to supply goods or services in the state" provides the Court a basis for exercising jurisdiction over such a person. N.Y. C.P.L.R. § 302(a)(1); <u>see also</u> <u>Bank Brussels Lambert</u>, 171 F.3d at 789. A non-domiciliary defendant transacts business within the state when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." <u>Cutco Indus., Inc. v. Naughton</u>, 806 F.2d 361, 365 (2d Cir. 1986) (internal quotation omitted). Proof of even one transaction in the state is sufficient to invoke jurisdiction under § 302(a)(1). See <u>Kreutter v. McFadden Oil Corp.</u>, 71 N.Y.2d 460, 467 (1988).

The Second Circuit developed a four-factor test in

Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98 F.3d 25, 29

(2d Cir. 1996), to determine whether the defendant "transact[ed]

business within the state" for the purposes of § 302(a)(1).   The

factors are:

> (i) whether the defendant has an on-going
> contractual relationship with a New York
> [plaintiff]; (ii) whether the contract was
> negotiated or executed in New York and
> whether, after executing a contract with a
> New York [plaintiff], the defendant has
> visited New York for the purpose of meeting
> with parties to the contract regarding the
> relationship; (iii) what the choice-of-law
> clause is in any such contract; and (iv)
> whether the contract requires [the defendant]
> to send notices and payments into the forum
> state or subjects them to supervision by [a]
> corporation in the forum state.

Id. at 29.   Courts have also looked at the place of contract

performance and held that "in determining jurisdiction, the place

of performance is more critical than the place of the execution

of a contract."   Cooper, Robertson & Partners, L.L.P. v. Vail,

143 F. Supp. 2d 367, 371 (S.D.N.Y. 2001) (citation omitted).

### 3.   **N.Y. C.P.L.R. § 301**

Alternatively, a foreign corporate defendant may be

subject to suit under C.P.L.R. § 301 if the defendant has

"engaged in such a continuous and systematic course of 'doing

business' . . . as to warrant a finding of its 'presence' in the

jurisdiction."   Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863,

865 (2d Cir. 1996) (citation omitted).   Sporadic business

- 8 -

activity in New York will not meet this standard; rather, "the court must be able to say from the facts that the [defendant] is present in the state not occasionally or casually, but with a fair measure of permanence and continuity." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33-34 (1990) (citation omitted).

### 4. **Due Process**

The exercise of personal jurisdiction must also satisfy the due process clause of the U.S. Constitution. Due process requires that a non-resident defendant have "certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Calder v. Jones, 465 U.S. 783, 788 (1984). If the defendant "purposefully avails itself of the privilege of conducting activities within the forum State," it may reasonably anticipate the prospect of defending a suit in the forum state and therefore asserting jurisdiction would comport with the requirements of due process. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citation omitted).

### B. **Application**

#### 1. **Personal Jurisdiction over Private Banking**

The Trabuccos have alleged that Private Banking "purposefully availed [itself] of the privilege of conducting activities within" New York and that the cause of action "arises from" those activities within New York. Cutco Indus., Inc. v.

- 9 -

Naughton, 806 F.2d 361, 365 (2d Cir. 1986); see also N.Y.
C.P.L.R. § 302(a)(1).

First, the Trabuccos have alleged that Private Banking
has an "ongoing contractual relationship" with New York
plaintiffs. Agency Rent A Car, 98 F.3d 25 at 29. Private
Banking and the Trabuccos executed an account agreement in March
2005. (Am. Compl. ¶ 8). Private Banking sent the account
documents to the Trabuccos' New York address. (Id.). This
relationship had continued for two years when Private Banking
executed the mistaken trade in February 2007. (Id.).

Second, the contract between the Trabuccos and Private
Banking required Private Banking to "send notices and payments
into the forum state." Agency Rent A Car, 98 F.3d 25 at 29.
Private Banking was in regular communication by phone, fax, and
mail with Trabucco at his New York phone number, New York fax
number, and New York mailing addresses. (Am. Compl. ¶ 8). As
part of the reporting requirements governed by the account
agreement, Trabucco received monthly account statements and
confirmations of all executed trades. (Id. ¶ 8). The continuous
communication of account-related information to the Trabuccos'
residence supports the idea that Private Banking "purposefully
availed" itself of the laws of New York. See Agency Rent A Car,
98 F.3d at 30 (holding that "continuous transmission of payments
and reports to New York" lends significant support to "purposeful
availment" of forum).

Third, a significant aspect of the contract was "performed" in New York.  See Barrett v. Tema Dev., 463 F. Supp. 2d 423, 432 (S.D.N.Y. 2006) (noting that whether real estate investment agreement contemplated investment in New York is relevant to "purposeful availment" inquiry).  As part of the brokerage services that Private Banking provided to the Trabuccos, Private Banking executed stock trades on the NYSE.  (Am. Compl. ¶ 11).  Indeed, the instant action arises from Private Banking's activities in New York.  Trabucco called Private Banking from New York to place his buy order.  (Id.).  Then, Private Banking engaged a New York agent and executed the Newmont trade on the NYSE.  (Id.).

Though defendants present evidence that the contract between Private Banking and the Trabuccos contains an Italian choice-of-law provision (Decl. of Alessandra Vitali Rosati ¶ 20), and that the contract was actually executed in Italy, these factors do not tip the scale against jurisdiction.  When a New York plaintiff sufficiently alleges that a foreign defendant has contracted to provide services in New York and has committed a breach of contract in New York, it cannot come as a surprise that the foreign defendant will be haled into court in New York.  Such an exercise of personal jurisdiction comports with the New York long-arm statute and the due process clause because Private Banking's contacts with New York are sufficient that "the maintenance of the suit does not offend traditional notions of

- 11 -

fair play and substantial justice." <u>Calder v. Jones</u>, 465 U.S. at 788.

### 2. **Personal Jurisdiction over Intesa**

Private Banking's parent corporation, Intesa, has a branch office in New York and regularly engages in business in New York.  (Am. Compl. ¶ 4).  This level of contact with New York confers general "doing business" jurisdiction.  <u>See</u> <u>Bryant v. Finnish Int'l Airlines</u>, 15 N.Y.2d 426, 432 (1965) (holding that a corporation that maintains an office and does business in New York is subject to jurisdiction under § 301).

## II. **Forum Non Conveniens**

### A. **Applicable Law**

Under the common law doctrine of <u>forum non conveniens</u>, a court with proper jurisdiction and venue over a matter may refrain from hearing the case if another significantly more appropriate forum exists.  <u>See</u> <u>Nations Bank of Florida v. Banco Exterior de Espana</u>, 867 F. Supp. 167, 169 (S.D.N.Y. 1994).  <u>Forum non conveniens</u> motions are governed by a three-step inquiry:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum.  At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute.  Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

<u>Norex Petroleum Ltd. v. Access Indus., Inc.</u>, 416 F.3d 146, 153 (2d Cir. 2005) (citing <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d 65, 73-74 (2d Cir. 2001) <u>(en banc)</u>).

- 12 -

## B.   **Application**

### 1.   **Deference Accorded to Plaintiffs' Choice of Forum**

A plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum.   Iragorri, 274 F.3d at 71 (citing Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)). Moreover, there is no allegation that the Trabuccos have chosen a New York forum for reasons of forum shopping.  The breach of contract occurred here as part of a NYSE trade; the Trabuccos live here; and Trabucco claims that his poor health prevents him from traveling to Italy to litigate the case.  (Am. Compl. ¶¶ 9, 11, 17).  The physical location of evidence is a wash -- there is evidence on both sides of the Atlantic.  Though Italy would be a perfectly acceptable alternative forum, New York has an interest in deciding a dispute with a substantial connection to the state. The public and private interests weigh in favor of leaving the Trabuccos' choice of forum undisturbed.

## III. **Contract Claims**

### A.   **Applicable Law**

#### 1.   **Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)

- 13 -

(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
The Supreme Court in Iqbal set out a "two-pronged" approach for
courts considering a motion to dismiss.  Id. at 1950.

First, the court accepts plaintiff's factual
allegations as true and draws all reasonable inferences in his
favor.  See id.; see also Vietnam Ass'n for Victims of Agent
Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008).  The
court considers only the factual allegations in the complaint and
"any documents that are either incorporated into the complaint by
reference or attached to the complaint as exhibits."  Blue Tree
Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide,
Inc., 369 F.3d 212, 217 (2d Cir. 2004).  Legal conclusions must
be supported by factual allegations.  Iqbal, 129 S.Ct. at 1949.

Second, the court determines whether the allegations
"plausibly give rise to an entitlement to relief."  Id.  A
plausible claim "pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Id. at 1949 (citing Twombly, 550 U.S.
at 556).

**B.   Application**

**1.   Private Banking**

To plead a breach of contract claim, a plaintiff must
allege:[1] "(1) the existence of a contract; (2) performance by the

---

[1]     Intesa and Private Banking allege that the account
agreement contains a choice-of-law provision requiring disputes
under the account agreement to be governed by Italian law.
(Decl. of Alessandra Vitali Rosati ¶ 20).  Rule 44.1 of the

party seeking recovery; (3) nonperformance by the other party; and (4) damages attributable to the breach." <u>Ixe Banco, S.A. v. MBNA America Bank, N.A.</u>, No. 07-0432 (LAP), 2008 WL 650403, at *5 (S.D.N.Y. Mar. 7, 2008) (citing <u>Musket Corp. v. PDVSA Petroleo, S.A.</u>, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007)). The Trabuccos have pled that a contract -- the account agreement -- existed between Private Banking and themselves. The Trabuccos have also pled that Private Banking failed to perform under the contract by mistakenly <u>selling</u> Newmont stock when Private Banking was instructed to <u>buy</u> Newmont stock. Finally, the Trabuccos have asserted that their damages exceed $700,000 as a result of an increase in Newmont's stock price between the mistaken trade on February 22, 2007 and the replacement of the 100,000 shares on November 6-8, 2008. The Trabuccos support their legal conclusion of breach of contract with factual allegations. Therefore, Private Banking's motion to dismiss is denied. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1950.

---

Federal Rules of Civil Procedure states "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice." This rule has been interpreted to mean that "the party invoking non-U.S. law bears at least the modest burden of notifying an opposing party and the court that non-U.S. law will be at issue." <u>In re Ishihara Chem. Co., Ltd.</u>, 121 F. Supp. 2d 209, 216 (E.D.N.Y. 2000), <u>vacated on other grounds</u>, 251 F.3d 120 (2d Cir. 2001). Both Intesa and Private Banking cite to New York law in their memoranda of law and they fail to direct the court to substantive differences between New York and Italian law. Therefore, I apply New York law to determine whether the pleading standards corresponding to the fraud and contract claim have been met.

### 2. **Intesa**

The Trabuccos do not assert that a contract existed between them and Intesa.  For the Trabuccos' claim against Intesa to survive Intesa's motion to dismiss, they must plead factual allegations to support the legal conclusion that Intesa "so dominates" Private Banking that it should be held liable for the actions of its subsidiary.  See id. at 1950.

### a. **Piercing the Corporate Veil**

Under New York law, one corporation is considered to be a mere alter ego when it "has been so dominated by . . . another corporation . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own."  Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979).  Then, the dominating corporation will be held liable for the actions of its subsidiary.  Tecnoclima, S.p.A. v. PJC Group of N.Y., Inc., No. 89-4437 (CSH), 1991 WL 33357, at *8 (S.D.N.Y. Feb. 27, 1991).  Alter ego cases typically involve the determination of "which corporate parties may be cast in damages for the breach" of a contract.  Id.  In this analysis, control is the key.  Wm. Passalacqua Builders, Inc. v. Resnick Developers, Inc., 933 F.2d 131, 138 (2d Cir. 1991).  Courts will only "pierce the corporate veil" where there has been "complete control by the dominating party that leads to a wrong against third parties." Id.  Facts relevant to the "complete control" inquiry are:

> (1) the absence of the formalities and
> paraphernalia that are part and parcel of the

- 16 -

corporate existence, . . . (2) inadequate
capitalization, (3) whether funds are put in
and taken out of the corporation for personal
rather than corporate purposes, (4) overlap
in ownership, officers, directors, and
personnel, (5) common office space, address,
and telephone numbers of corporate entities,
(6) the amount of business discretion
displayed by the allegedly dominated
corporation, (7) whether the related
corporations deal with the dominated
corporation at arms length, (8) whether the
corporations are treated as independent
profit centers, (9) the payment or guarantee
of debts of the dominated corporation by
other corporations in the group, and (10)
whether the corporation in question had
property that was used by other of the
corporations as if it were its own.

Wm. Passalacqua Builders, 933 F.2d at 139 (citations omitted).

### b.   **Application**

The Trabuccos allege that they opened an account with

BCI, an Intesa predecessor corporation, over 30 years ago and

have maintained the account ever since.   (Am. Compl. ¶ 8).   They

allege that in March 2005, the Intesa-controlled banking group

transferred the Trabucco account from Intesa to Intesa's Private

Banking subsidiary.   (Id.).   As a part of the account-transfer

process, Private Banking sent an account agreement to the

Trabuccos, but failed to notify the Trabuccos that their

contractual relationship with Intesa was being replaced by a

similar relationship with Private Banking.   (Id.).   Adding to the

confusion, the same bank representative handled the Trabuccos'

account even as it was transferred from BCI to Intesa to Private

Banking.   (Id.).

- 17 -

These facts support the conclusion that Intesa asserted substantial control over Private Banking with respect to the Trabucco account.  Intesa substituted its discretion for that of Private Banking when it directed Private Banking to assume responsibility for the Trabucco account.  Furthermore, Intesa directed the same banking representative to handle the Trabucco account while it was controlled first by Intesa, and then by Private Banking.  It is plausible that such action amounts to an "overlap in personnel" or "absence of [corporate] formalities."  Wm. Passalacqua Builders, 933 F.2d at 139 (citations omitted).  It is a "reasonable inference" that Intesa asserted the level of control over Private Banking necessary to satisfy the "veil piercing" inquiry at this stage of the proceedings.  Iqbal, 129 S.Ct. at 1949.

The Trabuccos have sufficiently pled a contract claim against Private Banking, an Intesa subsidiary.  The Trabuccos have also alleged facts sufficient to make their claims under the "veil piercing" inquiry plausible.  Thus, the Trabuccos have satisfied the pleading standard to extend liability for a contract claim against Private Banking to Intesa, the corporate parent.  For these reasons, Intesa's motion to dismiss the contract claim is denied.

- 18 -

## IV.   **The Fraud Claim**

### A.   **Fed. R. Civ. P. 9(b)**

Fed. R. Civ. P. 9(b) requires that, whenever a complaint contains allegations of fraud, "the circumstances constituting fraud . . . shall be stated with particularity." See Fed. R. Civ. P. 9(b); see also Chill v. GE, 101 F.3d 263, 267 (2d Cir. 1996) (noting that "the actual fraudulent statements or conduct and the fraud alleged must be stated with particularity") (internal citations omitted).  "[A] complaint making such allegations must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).  "In short, a plaintiff must 'set forth the who, what, when, where and how of the alleged fraud.'"  United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ., 451 F. Supp. 2d 613, 623 (S.D.N.Y. 2006) (citation omitted).

### B.   **Fraud Claims Based on Future Promises**

When a fraud claim is based on a future promise, the plaintiff must additionally show that "the defendants had no intention of carrying out [the promise] at the time the promise was made."  Olivieri v. McDonald's Corp., 678 F. Supp. 996, 1001 (E.D.N.Y. 1988) (citation omitted).  To meet this standard the

plaintiff must go beyond "a mere showing of nonperformance."  Id.

(citation omitted).  Courts have been hesitant to allow

plaintiffs to tack fraud claims onto contract claims when the

fraud claim amounts to nothing more than "allegations about [the

defendent's] state of mind [regarding] the claim for breach of

contract."  Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154,

1162 (S.D.N.Y. 1996).

### B.  **Application**

#### 1.  **Private Banking**

On November 1, 2008, Trabucco discovered that Private

Banking mistakenly sold (instead of bought) 50,000 shares of

Newmont stock in his name.  Private Banking confirmed -- orally

and in writing -- that it made the mistake.  The Trabuccos allege

that on the days between November 1, 2008 and November 8, 2008,

representatives of Private Banking induced them into using their

own money to replace the missing Newmont shares by promising

Trabucco that Private Banking would reimburse the account.  The

Trabuccos allege that the statements were fraudulent because

Private Banking never intended to reimburse the Trabuccos and, to

this day, has not made good on the promise to reimburse them.

The Trabuccos fail to allege facts supporting their

legal conclusion that Private Banking never intended to reimburse

their account.  They allege that Private Banking has not

performed on the promise to reimburse them, but under New York

law, the Trubuccos must go beyond "a mere showing of

nonperformance." Olivieri, 678 F. Supp. at 1001. Furthermore, the fraud claim is not sufficiently distinct from the contract claim. See Bridgestone/Firestone, Inc. v. Recovery Credit Servs. Inc., 98 F.3d 13, 20 (2d Cir. 1996) (citation omitted) (stating that conversion of a contract claim to a fraud claim is only permissible when: plaintiff demonstrates (i) a legal duty distinct from the contract claim; (ii) a fraudulent mispresentation extraneous to the contract; or (iii) damages that are unrecoverable as contract damages). For these reasons the fraud claim against Private Banking is dismissed.

### 2. **Intesa**

Because the Trabuccos have failed to sufficiently allege a fraud claim against Private Banking, the fraud claim against the parent corporation, Intesa, is also dismissed.

### CONCLUSION

For the reasons set forth above, the motion to dismiss is denied as to the contract claims against both Private Banking and Intesa and granted as to the fraud claims against both Private Banking and Intesa. Private Banking and Intesa shall file an answer to the complaint within 21 days of this order.

SO ORDERED.

Dated:    New York, New York
          March 19, 2010

_____
DENNY CHIN
United States District Judge

- 21 -